## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION AT MEMPHIS

| | | |
|---|---|---|
| LEANNA KEYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| CIRCUIT PLAYHOUSE, INC d/b/a | ) | JURY TRIAL DEMANDED |
| PLAYHOUSE ON THE SQUARE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Leanna Keyes, by and through counsel, for cause of action against the Defendant, Circuit Playhouse, Inc. d/b/a Playhouse on the Square, and respectfully states as follows:

### NATURE OF THE ACTION

1.      This is an action for damages sustained by a United States citizen and employee for retaliation and discrimination by management of a professional theatre company whose conduct violated Title VII of the Civil Rights Act of 1964 after the employee took a leadership role within the company to investigate and address serious allegations of sexual assault and was subsequently terminated after a perfunctory review because she did not fit in the "family culture" of the theatre company, which "family culture" was to tolerate unlawful employment practices and protect predatory sexual assaults.

## PARTIES

2.      Plaintiff, Leanna Keyes ("Keyes"), is an adult female citizen and resident of Shelby County, Tennessee.

3.      Defendant, Circuit Playhouse, Inc. is a Tennessee mutual benefit corporation d/b/a Playhouse on the Square ("POTS"), duly organized and existing under the laws of and registered to do business in the State of Tennessee with its principal place of business being 66 S. Cooper St., Memphis, TN, 38104. Playhouse on the Square is an assumed name of Circuit Playhouse, Inc. Defendants may be served with process on its registered agent, Mr. Michael Detroit, at 66 S. Cooper St., Memphis, TN, 38104. At all times relevant hereto, POTS was an employer in Memphis, Shelby County Tennessee that engaged in an industry affecting commerce and employed more than fifteen (15) regular employees.

## JURISDICTION AND VENUE

4.      This Court's jurisdiction over the causes alleged herein is predicated on 28 U.S.C. §§ 1331 and 1343(3). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, *et seq.*). The jurisdiction of the Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive and other relief for illegal discrimination in employment.

6.      Venue for this action is properly laid in the Western District of Tennessee since all acts and events pertinent to this case transpired within the territory and bounds of the same.

**ALLEGATIONS OF FACT**

7.      Plaintiff, Leanna Keyes, is a playwright, producer, and designer whose work has been studied at universities across the country including Stanford University, Carnegie Mellon, Rhodes College, Linfield College, the University of Kansas, and Western Carolina University.

8.      After graduating from Stanford University with a Bachelor of Arts, with honors, in 2014, Ms. Keyes worked as a professional stage manager and production manager including time in Actors' Equity Association, a stage manager union.

9.      Playhouse on the Square ("POTS" or "Playhouse") is the only professional theatre company in Memphis, Tennessee.

10.     In October of 2017, Defendants interviewed Ms. Keyes twice for the position of Production Stage Manager/ Production Manager. POTS Managing Director Whitney Jo interviewed Ms. Keyes on October 2nd. On October 10th Ms. Keyes interviewed with Whitney Jo as well as Executive Producer Jackie Nichols, Associate Producer Michael Detroit, and Phillip Hughen, Technical Director.

11.     Following Plaintiff's interviews, Defendants formally offered Ms. Keyes the position of POTS Production Stage Manager/ Production Manager on October 11, 2017, which Plaintiff accepted on October 18, 2017.

12.     The Parties executed an employment contract dated October 18, 2017 (the "Contract"), a copy of which is attached hereto as **Exhibit A** and fully incorporated by reference.

13.     Defendants presented the Contract to Plaintiff as long-term employment with annual raises and expanded health care and vacation as set out in the POTS Handbook. The Contract did not include an expiration date.

14.     When Ms. Keyes accepted the job offer from POTS, she was required to resign from the Actors' Equity Association. Upon information and belief, once a Union member resigns, he/she cannot rejoin without special dispensation and a significant additional fee.

15.     On November 6, 2017, Ms. Keyes began working for POTS as Production Stage Manager/Production Manager.

16.     During Ms. Keyes' first month of employment with POTS, she was touched inappropriately by a senior staff member.

17.     A longtime POTS staff member also warned Ms. Keyes of Jackie Nichols' predatory behavior and told her specifically not to be alone with him.

18.     Ms. Keyes became increasingly aware of a culture of tolerance at POTS for sexual abuse and misconduct of company members.  This knowledge, combined with her personal victimization, created an oppressive atmosphere in which Ms. Keyes often felt most comfortable and safe inside her own office, where she felt she had some measure of control.

19.     On December 1, 2017, Jackie Nichols was publicly accused of rape, sexual assault, and pedophilia by his former step-daughter.

20.     Ms. Keyes learned of the allegations of sexual assaults perpetrated by POTS upper management on interns and staff from a December 28, 2017 Facebook post by the Memphis Feminist Collection.

21.     Ms. Keyes learned that these accusations matched a pattern of pedophilic sexual misconduct by Jackie Nichols.

22.     Ms. Keyes learned that Jackie Nichols' pattern of sexual misconduct was well-known and apparently accepted by Playhouse management and senior staff, as well as certain members of the Playhouse Board of Directors (the "Board").

23.     For over a month following the public disclosure of the accusations against Jackie Nichols, the Board took no action regarding the accusations against Jackie Nichols.

24.     POTS' own Handbook includes a provision on Sexual Harassment, which states in relevant part:

> If a situation develops that you feel should be investigated, you may contact, in total confidence, a higher authority than the individual in question. It is the responsibility of every Circuit Playhouse, Inc. employee to assist in the furtherance of this policy.

25.     After learning of the sexual assault allegations and reading the Facebook post, Ms. Keyes along with another newly hired staff member, Mr. William Gibbons-Brown, undertook an informal investigation with their interns and staff.

26.     Incident to the informal investigation, Ms. Keyes spoke to the woman who made the initial allegations of sexual assault against Jackie Nichols and subsequently to several former members of the POTS community and a current intern who related incidents of sexual abuse when they were minors. Ms. Keyes also received specific information from a male intern who made allegations of a recent sexual assault by Jordan Nichols, son of Jackie Nichols, at a POTS retreat.

27.     On January 3, 2018, a meeting including 23 interns and staff convened at POTS to discuss the allegations of sexual misconduct by Jackie Nichols. At the meeting, Ms. Keyes compiled participants' concerns. Following the meeting, Ms. Keyes circulated a statement of principles and a list of demands and goals (the "Statement"), which is attached as **Exhibit B** and fully incorporated by reference.

28.     Following the January 3rd meeting, Ms. Keyes learned that POTS' Executive Board had called its own emergency meeting. Ms. Keyes along with Mr. Gibbons-Brown and two interns knocked on the door in an attempt to meet with them. Initially, the Executive Board rebuffed the

5

group's request, but ultimately the Board agreed to meet with Ms. Keyes and the rest of the group comprised of approximately 30 interns and staff that had gathered in the POTS Café.

29.     Ms. Keyes began the impromptu meeting between the Executive Board and the group of approximately 30 interns and staff by reading aloud the Statement. After a short negotiation with the group, the Executive Board members retreated to discuss the group's demands and goals included in the Statement.

30.     After the Executive Board met for approximately 45 minutes of discussion, a member of the Board announced that Jackie Nichols would take a "leave of absence" and that an Investigator would be hired and further stated, unprompted, that there would be no retaliation.

31.     On January 4, 2018, the day after Ms. Keyes approached the Executive Board, Whitney Jo and Mike Detroit called an all staff meeting where they announced that Jackie Nichols had taken a voluntary leave of absence and advised all staff members of the Handbook's prohibition on any discussion of Playhouse business.

32.     On January 9, 2018, the intern who alleged Jordan Nichols had sexually assaulted him at a POTS retreat provided Ms. Keyes a written statement of what transpired at the retreat. Ms. Keyes promptly provided the intern's written allegations of sexual assault to the designated Board Liaison, Mr. Paul Guibao.

33.     Ms. Keyes arranged a meeting with Board Member Jeramie Simmons on January 18, 2018 to discuss Plaintiff's concerns regarding the unfolding allegations of sexual assaults and POTS response since January 4, 2018.

34.     Throughout early 2018, Ms. Keyes continued to plan for the next season at POTS. As she continued her work, Ms. Keyes noticed that Mike Detroit and Whitney Jo began ignoring and marginalizing her within the workplace.

35.     During the same time period, Ms. Keyes never once received a negative evaluation nor any disciplinary actions from Mr. Detroit, Ms. Jo, or any other POTS employee.

36.     February 6, 2018 marked the end of Ms. Keyes' three-month evaluation period.

37.     February 11, 2018 marked the end of the production "Once," which Ms. Keyes had produced.

38.     On February 13, 2018, Ms. Keyes was given her three-month review at 10 a.m. During Ms. Keyes' perfunctory review, there was no discussion of her job performance. Instead, Ms. Keyes was told that she did not fit the "family culture" of POTS and was presented with her termination letter, which is marked **Exhibit C** and fully incorporated by reference.

39.     Ms. Keyes filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 27, 2018 and has met all administrative prerequisites to bring forth this action.

40.     On August 22, 2019 the EEOC issued a right to sue letter in Ms. Keyes case, EEOC charge No. 490-2018-01439.

41.     As a result of Defendant's conduct in terminating Ms. Keyes' employment, Ms. Keyes has suffered – and will continue to suffer – lost income, lost fringe benefits, damage to her reputation, humiliation, loss of economic advantage and has incurred expenses in searching for replacement employment.

### COUNT I: THE INTENTIONAL DISCRIMINATION AND SEXUAL HARASSMENT CREATED A HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

42.     The allegations set forth in paragraphs 1-41 are hereby reiterated and incorporated fully by reference.

43.     Plaintiff filed a timely charge with the EEOC and has thus exhausted her administrative remedies.

44.     Despite the seriousness of the allegations against Jackie Nichols, the Defendant did nothing for over a month.

45.     Pursuant to provisions in Defendant's Handbook, Ms. Keyes took actions consistent with what POTS' written culture claimed to require. In fact, as a result of Ms. Keyes' own initiative, she was able to reach the Board and convey the list of concerns and demands which preceded the announcement that Jackie Nichols would take a voluntary leave of absence.

46.     The two POTS managers who interviewed Ms. Keyes, Ms. Whitney Jo and Mr. Michael Detroit, called a meeting the day after Ms. Keyes notified the Executive Board to address the egregious claims against Jackie Nichols. Notably at the meeting, Ms. Jo and Mr. Detroit did not go over the Handbook's provision on POTS' Whistleblower policy. They did not review provisions to protect staff from unwanted sexual harassment or other legal protections to preserve a safe, discrimination-free workplace. Instead, Ms. Jo and Mr. Detroit focused their conversation on the Handbook provision to remain silent about POTS business and imposed a gag-order on staff and personnel.

47.     In the weeks that followed Ms. Keyes confronting the Executive Board and reading the Statement of concerns, Ms. Keyes noticed that members of POTS upper management were ostracizing her. As a result, Ms. Keyes spent much of her time in her office where she felt safe.

48.     The treatment of Ms. Keyes by POTS management following the events detailed *supra*, created a hostile work environment that was predicated on the long-standing tacit acceptance of egregious sexual assaults spanning years at POTS, i.e. the "family culture".

49.     Rather than address and correct the underlying issues uncovered in part by Ms. Keyes' investigative acts, POTS summarily and in retaliation, discharged Ms. Keyes.

50.     Defendant has engaged in an intention, company-wide, and systemic policy, pattern, and/or practice of discrimination against its female employees. Defendant has intentionally discriminated against Plaintiff in violation of Title VII by, among other things:

     a.   Failing to properly notify employees of their rights under Title VII;

     b.   Fostering a culture of silence surrounding allegations of sexual assault; and

     c.   Terminating her for challenging the "family culture" of toleration of sexual harassment.

51.     The foregoing conduct constitutes illegal, intentional discrimination and a hostile work environment prohibited by 42 U.S.C. §§ 2000e *et seq*.

52.     As a direct result of POTS discriminatory policies and/or practices described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation and benefits, mental anguish, suffering, humiliation, damage to reputation, and loss of enjoyment of life.

## COUNT II: DEFENDANT VIOLATED TITLE VII BY THE
## UNLAWFUL RETALIATORY DISCHARGE OF MS. KEYES

53.     The allegations set forth in paragraphs 1-52 are hereby reiterated and incorporated fully by reference.

54.     Ms. Keyes, as herein alleged, engaged in a protected activity under Title VII, and her protected activity was known to POTS. Ms. Keyes led the organized demand that the Board take action against Jackie Nichols, address allegations and alleviate workplace sexual misconduct by Jordan Nichols and such conduct was protected conduct under Title VII, as her actions were

reasonable by any measure and directed in opposition to obviously unlawful –indeed, even criminal – workplace conduct by Playhouse management and senior staff.  It is beyond dispute that Playhouse was aware of Ms. Keyes' activity and that she was subsequently terminated.

55.     Ms. Keyes' actions in opposition to Jackie Nichols, Jordan Nichols, and the Defendant's "family culture" of acceptance of sexual predation, was the cause of her subsequent retaliatory termination.

56.     As a direct result of her retaliatory termination by Defendant Ms. Keyes suffered damages including, but not limited to, lost past and future income, compensation and benefits, mental anguish, suffering, humiliation, damage to reputation, and loss of enjoyment of life.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Leanna Keyes requests that a jury be empaneled to hear and decide all issues set forth or fairly raised herein and requests a judgment granting the following relief against the Defendant:

1. Compensatory damages in the amount of not less than $750,000.00, and

2. Pre and post judgment interest; and

3. Punitive or exemplary damages in the amount commensurate with Defendant's ability to pay and to deter future misconduct;

4. Litigation costs and attorneys' fees to the extent allowable by law; and

5. Any and all other legal and equitable relief that this Court may deem just and proper under the circumstances.

Dated this the 15th day of November, 2019.

Respectfully submitted,

**APPERSON CRUMP PLC**

/s/Bruce S. Kramer
Bruce Kramer (#7472)
Melody Dernocoeur (#35108)
Jacob Webster Brown (#36404)
6000 Poplar Avenue, Suite 150
Memphis, TN 38119
Phone: (901) 756-6300
Facsimile: (901) 757-1296
bkramer@appersoncrump.com
mdernocoeur@appersoncrump.com
***Attorneys for Plaintiff***